Filed 11/21/14  C.B. v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| C.B., | |
| Petitioner, | E061944 |
| v. | (Super.Ct.No. J251535) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Lily L. Sinfield, Judge.  The petition is denied.

Friedman, Gebbie, Cazares & Gilleece, Jasmine Pico, for Petitioner.

No appearance for Respondent.

1

Dawn M. Messer, Deputy County Counsel, and Jean-Rene Basle, County Counsel, for Real Party in Interest.

A dependency petition was filed with respect to the minor, S.B., on June 28, 2013, in San Diego County alleging that petitioner C.B. (mother) had failed to protect her due to mental illness and substance abuse. (Welf. & Inst. Code, § 300, subd. (b).)[1] The San Diego social worker reported that the minor's maternal grandparents had brought her in for a four-month checkup in April 2013, at which time she had a severe case of cradle cap. The grandparents had gone to visit Mother and been concerned at the messy, dirty state of the house and because Mother was smoking marijuana and behaving erratically. The grandparents also reported that Mother had a history of prostitution and her landlord was complaining about frequent and numerous male visitors. Mother was 26 years old at the time the petition was filed.

When contacted by the child services agency in April or May 2013, Mother reported being bipolar and to also have been diagnosed with attention deficit hyperactivity disorder and posttraumatic stress disorder, among other ailments. She was not then on medications, but after agreeing to voluntary services and that the minor would stay with the grandparents for the time being, she was prescribed Abilify and Seroquel.

---

[1] All subsequent statutory references are to the Welfare and Institutions Code unless otherwise specified.

During the period of voluntary services, Mother was allowed to visit with the minor daily, but on most days did not take advantage of this opportunity. When she took the minor to her apartment (which the grandparents were paying for), she would often call her father and say that she "couldn't handle" the baby because the latter was fussy or crying. As much as two weeks might go by between visits. Mother declined the offered in-home services, and, when she lost her housing, she refused to provide her new address to the agency. On June 11, 2013, she was asked to drug test, and refused, saying she would give up the minor to the grandparents. The formal petition followed.

The report prepared for the jurisdictional/dispositional hearing reflected that Mother admitted multiple arrests, specifying only one for public intoxication and one for simple assault. She related her criminal troubles to a period during which she was being "trafficked."[2] Mother reported that her "drug of choice" was marijuana, although she denied current use. She also reported using cocaine and ecstasy, as well as one use of methamphetamine.

Mother further stated that she had been to therapy and that "I like going to therapy," but could not provide any examples of coping skills she had learned.

Mother's father, the current caregiver, reported that at visits Mother tended to use the baby to calm herself, like a child with a doll, and frequently ended visits early because she could not deal with the child's crying. Mother also reported abusive

---

[2] Although the report indicates that Mother was forthcoming about her experiences, it contains no details.

relationships both with a pimp and with the father of the minor.[3] The social worker had also uncovered Mother's extensive criminal history, with multiple arrests and convictions involving disorderly conduct, prostitution, and possession of marijuana.

While awaiting the eventual jurisdictional/dispositional hearing, Mother was given a random drug test in August 2013, which returned positive for amphetamines and marijuana. However, Mother had been attending domestic violence support groups and also "self-esteem/art therapy" and parenting education.

At the hearing, Mother waived her rights and submitted on both jurisdiction under section 300, subdivision (b), and disposition (continued placement with the maternal grandparents). The court made the findings and disposition as requested by the agency. Finally, as Mother had moved to San Bernardino County, the court granted her request to transfer the matter to that jurisdiction.

At Mother's first contact with San Bernardino social workers in December 2013, she refused to sign the case plan. In the report prepared for the six-month review hearing, the social worker recommended extending services. However, it was noted that Mother "appears to be struggling with remaining sober and maintaining [*sic*] her anger." She had been uncooperative with drug testing but did test positive for marijuana in January 2014. She told the social worker that she had begun counseling and outpatient services, but had not completed them. Services were continued.

---

[3] The minor's father is not in the picture and is not a party to this petition.

The report prepared for the 12-month review hearing reflected that although Mother had engaged in some counseling sessions in early 2014, she had also missed several appointments, and, in the opinion of the therapist, was failing to address her issues and not making progress. She was then terminated from the program.

Additional referrals were given, but Mother resisted outpatient drug treatment because she insisted that she used "medical marijuana" and the social worker did not "understand."[4] She also claimed that because she was attending school, she could not meet the requirements of her case plan. Mother missed some drug tests and consistently tested positive for marijuana when she did test.

Mother was given an additional set of referrals for outpatient and general counseling and provided bus passes and transportation.

In May, the social worker made an unannounced visit to Mother's apartment but was refused admission. Mother became upset about "Children and Family Services jerking her around," and told the social worker that she "[would] talk to her attorney" because "she doesn't believe smoking marijuana is a drug."[5] Also at that time, the social worker urged Mother to complete her programming because she had been terminated from her substance abuse counseling.

---

[4] The social worker asked Mother to provide documentation that her marijuana use was health-related, but she failed to do so.

[5] She also said she had a "business" selling crafts which she made at school.

5

After a positive drug test in July and after being again reminded about the need for substance abuse treatment, Mother became "highly upset" and stated that the social worker "did not understand." She told the social worker that her current therapist had been "fired" and was given another referral. The counseling agency told the social worker that Mother had not been in since March 2014.

In early August 2014, Mother contacted the social worker and said that she had an appointment with Lutheran Social Services for August 8 and an appointment with an outpatient program scheduled for August 13. It was also noted that Mother behaved appropriately during visits with the minor and that there appeared to be a bond between the two, although the minor bore the separations with equanimity. Mother also provided a medical marijuana authorization dated September 22, 2014, and therapist notes for four visits. In the first note, the therapist noted that Mother blamed her stepmother (her father's wife) for her problems and did not take any responsibility for the child's removal. The second note reflected that Mother admitted that the minor's severe case of " 'cradle cap' " might have contributed to removal and explained that she cannot perform a drug-related outpatient program because she takes "certain medications for her bipolar disorder" that are not on the " 'safe' " list. The third note describes Mother as "hopeful," "happy," and in "denial" about her situation. The fourth note gave her mood as "labile" and noted that Mother appeared more willing to accept the seriousness of the circumstances.

The 12-month review hearing was held September 24, 2014. Mother testified that she had completed eight counseling sessions and that they were "okay." She also claimed that she had not used marijuana for three months, despite having obtained a doctor's authorization two days earlier. She testified that she had gone to an outpatient program intake the Thursday before the hearing, but the program employees refused to take her because she was still using at least five other medications for her mental health issues. However, she also testified that she had contacted her physician to see if she could change medications and qualify for the outpatient program. She had a new appointment for the latter scheduled for October 28.

Asked why she had delayed trying to get into an outpatient substance abuse program, Mother said, "I misunderstood," and that she had had earlier difficulties qualifying for her program due to her prescribed medications. Asked if she were willing to complete her services, she responded, "If that's what the Court wants me to do, then that's what I have to do to get my daughter back."

On cross-examination, Mother admitted receiving earlier referrals and not following up. She admitted that she had not allowed the social worker into her home in May, but testified that it was because the home was not yet "ready for an inspection." She further admitted that the home was still not safety-proofed for a small child.

The trial court followed the recommendation and terminated services.

On this petition, Mother argues that the trial court applied an incorrect standard and that she should have been provided additional services up through the 18-month date, which she calculates as December 28, 2014. We find her premise unpersuasive.

DISCUSSION

In explaining its decision, the court remarked, "what I'm looking for right now because I'm required to look for it at the one year review is whether or not your daughter can go home today." As Mother points out, this is an incorrect statement of the law. The standard at the 12-month review hearing is whether there is a "substantial probability that the child will be returned to the physical custody of his or her parent . . . and safely maintained in the home" within the outer 18-month period. (§ 366.21, subd. (g)(1).)

However, within a few moments the court commented that Mother had not even progressed to unsupervised visits and continued, "I cannot make, based on the level of progress, the finding *that your daughter can go home in an extended time period even though it's short*. I have to first make a finding before I can get to that." (Italics added.) We interpret this as recognizing that a certain time remained in the potentially available reunification period "even though it's short." This is buttressed by the fact that both county counsel and the minor's attorney noted in their argument that time remained available: the county counsel stated that "the Department doesn't believe that there's really any chance of Mother reunifying by the December date", and minor's counsel agreed, commenting that "it does not appear that there's a substantial likelihood that the

8

mother would be able to complete services and show benefit and ability to take the child into her home by the time of the 22 which sounds like late December."

We therefore conclude without difficulty that the trial court applied the correct standard.

We also reject Mother's argument with respect to the merits of the decision, which we review for substantial evidence. (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1424.) At the time of the hearing, only three months remained even in the extended reunification period. Although Mother had begun to participate in counseling and had made efforts to enter an outpatient drug program, she had essentially wasted a year of the available time. Under section 366.21, subdivision (g)(1), services may only be extended to the 18-month limit if the parent has already made "significant progress" and "has demonstrated the capacity and ability . . . to complete the objectives of his or her treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs." Given her late start at real efforts and her repeated refusal to cooperate with the social worker, the trial court could not reasonably have made such a finding. On the other hand, the court's statement that it did not believe that Mother would reunify with the minor within the extended period was supported by substantial evidence.

DISPOSITION

The petition is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST

Acting P. J.

We concur:


RICHLI

               J.


CODRINGTON

               J.